

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Overruled by V-774
in part

Honorable Sidney Latham
Secretary of State
Austin, Texas

Dear Sir:

Opinion No. 0-5480
Re: Inclusion of "unrealized
profit" item as surplus in
computation of franchise tax,
and mode of resolving disputes
about the existence and amount
of such item.

Your opinion request of October 15, 1943, reads
as follows:

"The O.K. Theatres Corporation is a Texas
Corporation operating a chain of motion picture
shows in the State of Texas, and as such is,
of course, subject to the franchise tax law of
this State.

"The corporation has filed its franchise tax
reports for the years 1936, 1937, 1938, 1939, 1940
1941, 1942 and 1943, and has paid the amount of
the franchise tax shown to be due by each of such
reports as computed by the corporation.

"This Department has made assessments of
additional taxes for each of the above mentioned
years based upon information contained in the
various reports and other facts furnished to this
Department by the company, which additional assess-
ments the company contends are unauthorized for
reasons hereinafter shown.

"At various times the company has sold certain
of its theaters to various purchasers, receiving
a small down payment and promissory notes represent-
ing the balance of the purchase money. The notes

Honorable Sidney Latham,    Page 2

are secured by the property sold, but such
security is not exclusive, as the notes are
a personal obligation of the maker.  The
company represents, however, that the makers
of the notes are otherwise unable to pay the
notes and that, as a practical matter, it will
be forced to look solely to the property sold to
secure the payment of the deferred purchase
price.  The company further represents that the
value of the property sold is far less than the
face value of the purchase money notes received
therefor, and that it never expects to realize
the face value of the notes and the resulting
large profits that would be realized if the
notes were paid in full; that ultimately it
expects to be forced to repossess the property
sold at their actual value which is appreciably
less than the purchase money notes received therefor,
all of which is claimed will result in a substantial
loss to the company compared to the present book
value of the notes.

"The company has followed the practice of filing
its franchise tax reports of showing the difference
in the amount actually paid on the notes and the
face value of the notes as 'unrealized profits'.
In computing its tax for the above mentioned years,
the company has never included these items of 'un-
realized profits' as taxable items and has paid no
taxes thereon upon the theory that like Federal
income tax, it was not taxable until actually
received.

"This year the Franchise Tax Division of this
Department made an assessment on all such items of
'unrealized profits' as shown on the current report
and all prior reports for the years above mentioned,
such additional assessments amounting to a total for
all years from 1936 to 1943, both inclusive, of $744.00.
These additional assessments were made by this Depart-
ment on the theory that ' unrealized profits' repre-
sented by promisory notes created a surplus to the
extent of the face value of the notes as reported
by the company, and that this Department was authorized,
if not required, to accept the value of the notes
as shown on the report, we being without means of
determining any alleged actual market value of the
notes.

Honorable Sidney Latham, Page 3

"The taxpayer has tendered a check in the sum
of $200.00 in full payment of all such additional
assessments made by this Department, contending
that if the items of 'unrealized profits' are
taxable at all as surplus, then they are taxable
only on the actual value of the notes rather than
the full face value, and that the $200.00 tendered
represents the tax for all prior years based upon
such actual value. In connection with the tender
of this payment, the taxpayer has requested the
privilege of amending the reports for all the years
in question in order to show an estimated actual
value of the notes in question and to set up as a
'reserve for losses' the difference in the estimated
actual value and the face value which is now shown
on the reports.

"By way of further explanation, there is attached
hereto the affidavit of Oskar Korn, President of
the corporation, with reference to the transactions
above mentioned.

"In the light of the above facts, will you please
advise this Department upon the following inquiries:

"1. Are the items of 'unrealized profit' taxable
under the franchise tax law at their face value as
shown on the franchise tax reports?

"2. Is this Department authorized to permit the
amendment of franchise tax reports after they are
filed in this office upon sworn statements that the
report as originally filed does not represent the
true condition of the taxpaying company?

"3. If we are authorized to accept or permit
amended reports, then is there any limitation as to
the number of prior years for which such amendments
can be accepted?

"4. Should this Department accept the $200.00
check that has been tendered in full satisfaction
of the additional assessments on the theory, as
contended by the taxpayer, that only the actual
value rather than the face value of the notes is
taxable?

Honorable Sidney Latham     Page 4

"5.  Is this Department authorized to accept the taxpayer's estimate of the actual value of the notes in question?"

In the case of United North & South Development Company v. Heath, et al., 78 S. W. (2d) 650 (error refused) the Austin Court of Civil Appeals held that an item variously carried on the books of a corporation as "appreciated surplus" and "unrealized appreciation" was properly included as "surplus" in the computation of the franchise tax liability of the corporation.  This item represented the increased value of certain oil leases as a result of the discovery of oil on land covered by such leases, with the value being then "unrealized" because the leases had neither been fully developed nor sold at their increased value.  Regardless of its particular denomination, this item was in effect "unrealized profit," and we construe the decision in this case as holding that items of "unrealized profit" are properly included as surplus in the computation of franchise tax liability.  Thus the Court said at page 652:

" In the instant case we think that any strict or technical definition of the term 'surplus' as used in the statute should not be applied, but one which would effectuate the legislative intent.  However carried on its books, the Matagorda county lease, a newly discovered field, was a very valuable asset of the corporation, estimated and represented by appellant itself to have a net value of from $20,000,000 to $42,120,000.  Obviously the lease afforded appellant both a potential and actual opportunity of vast and extensive proportions in carrying on its business in this state.  The value of its privilege or franchise was increased accordingly.  And this value, fixed by appellant, was obviously the basis on which the state's tax was intended to be computed.  The fact that this full estimated or appraised value might not eventually be fully realized is not determinative of the amount of the tax.  It is clear that appellant anticipated a volume of business resulting from such asset, a potential income, far beyond a normal use of its capital stock, and enjoyed a privilege far more valuable than that measured by its capital stock alone.  Regardless of the classification of such item made by it upon its books, under the decisions above cited, and the obvious purposes of the Legislature as expressed in articles 7084 and 7089 R.S. as amended (Vernon's Ann. Civ. St. arts. 7084, 7089) we think the secretary of state properly took the value placed thereon by appellant in its report into consideration in computing the amount of the franchise tax due the state by appellant."

Honorable Sidney Latham     Page 5

In your first question you inquire whether the unrealized profit items should be taxed at their face value as shown on the franchise tax reports; the alternative to this mode of treatment would be to tax such items at their actual value. Under normal accounting procedure, the value assigned to an item of unrealized profit is dependent upon the value assigned to assets. If the assets are carried at an artificial valuation, the value reflected for unrealized profits will also be artificial. In the instant situation, if the notes are carried on the asset side of the ledger at a value above their true worth, the unrealized profit item will be magnified proportionately. We feel that these items should be taxed at their actual value rather than at their face value. Article 7089 requires a corporation to report "the cash value of all gross assets" rather than the face value of such assets. If the cash value of assets is to be reported, it would seem that the legislature intended that items of unrealized profit be reported and taxed at their actual value, since such value is the only one which can be derived from the cash value of assets. Moreover, as was said by the Court in the Heath case, a franchise tax is "but a charge made by the state against the corporation for the privilege granted it to do business in the state." The amount of the charge is determined in part by the value of the property owned by the corporation, and such amount has been made to fluctuate with the value of such property on the theory that the value of the privilege granted by the State varies directly with the volume of assets of the corporation which enjoys such privilege. Obviously it could never have been the intention of the legislature to allow a corporation to minimize its franchise taxes by assigning a low face value to those profits which might be realized from a valuable asset; conversely, the legislature could never have intended that the franchise tax liability of a corporation be inflated by its possession of an asset which, though depreciated in value, bears a high face value and is reflected in high unrealized profits.

Consequently, in answer to your first question, you are respectfully advised that items of unrealized profit are taxable as part of surplus and that the tax should be based upon the actual value rather than the face value of such items.

Honorable Sidney Latham   Page 6

The remainder of your inquiries center around the problem of how and by whom this taxable value is to be determined.   In this connection, Article 7087 provides:

"To determine the amount of the first franchise tax payment required by this chapter of any domestic corporation which may be hereafter chartered, or of any foreign corporation which may hereafter apply for a permit to do business within this State and also to determine the correctness of any report which is provided for in this chapter, the Secretary of State may, whenever he deems it necessary or proper to protect the interests of the State, require any one or more of the officers of such corporations to make and file in the office of the Secretary of State an affidavit setting forth fully the facts concerning the amount of the surplus and undivided profits, respectively, if any, of such domestic or foreign corporation; and until the Secretary of State shall be fully satisfied as to the amount of such surplus and undivided profits, respectively, if any, he shall not file the articles of incorporation of such proposed domestic corporation, or issue such permit, or accept such franchise tax."

Our courts have never stated whether this Article is applicable to all corporations required to submit a franchise tax report or whether the powers granted to the Secretary of State by said Article are confined in their operation to foreign corporations which are making their initial application for a permit to transact business.   In the case of Southern Realty Corporation, et al., v. McCallum, et al., 1 F. Supp. 614, a federal district court took the latter position, saying:

"With the exception of foreign corporations applying for initial permit, the act seems to contemplate that the tax shall be computed on the sworn reports made by the corporation. . . That portion of the act which gives the Secretary of State authority to obtain and be guided by information 'from other sources' now apparently relates only to corporations applying for charter or permit. . ."

However, in the same case as reported in 65 F. (2d) 934,(cert. denied, 290 U.S. 592) the Circuit Court of Appeals refused to decide the scope of this Article, stating at p.937:

Honorable Sidney Latham    Page 7

> "It is true that the gross receipts in and out of
> Texas and the value of assets where a surplus exists in-
> volve disputable facts, but authority is given to no offi-
> cer to correct the figures reported. The additional in-
> formation required in the regular report or obtained by
> affidavit under Article 7087 or otherwise may be useful
> to induce a true report or to found a prosecution for false
> swearing in making an untrue one. We do not decide whether,
> as is contended, Article 7087, which speaks of determining
> the correctness of the report and satisfying the secretary
> of the amount of the surplus, applies only to the first
> year of business in Texas. If applied to all reports in
> all years where a surplus is involved, it only results in
> the secretary not accepting the tendered franchise tax.
> He cannot enforce his views by an assessing and distraining.
> If because of a dispute over surplus he rejects the tax,
> the Attorney General must file suit for its collection under
> Article 7095. Presumably in that suit a full hearing could
> be had as to the matters in dispute. In cases where Article
> 7087 is not applicable, dispute might arise as to the pro-
> portion of intrastate business to all business, or as to
> the amount of long-time indebtedness or the like. In such
> a case the secretary no doubt would accept what was offered
> on account of the tax, having the Attorney General to bring
> suit for the difference claimed. . ."

Regardless of the applicability of Article 7087, we feel
that the latter case is authority for the proposition that the only
statutory method of collecting delinquent franchise taxes is by action
of the Attorney General. However, this is not to say that the Secretary
of State has no powers with respect to such collections, for if he
feels that payments either for current or for past years are insuffi-
cient, he is privileged to report this fact to the Attorney General
with the request that the latter official bring suit for the addi-
tional taxes. In this situation, the Secretary of State does not
purport to "correct" the reports submitted by the taxpayer; neither
does he attempt to make an assessment and demand for any taxes which
he deems due--if he feels that the taxpayer has not discharged his
liability, his sole act is to place the matter in the hands of the
Attorney General so that the courts may ascertain the proper amount
of the taxes. It is obvious that before the Secretary of State takes
this step, he may desire to inform the taxpayer of the amount of the
taxes which he feels are due and may desire to negotiate with the
taxpayer in an attempt to reach an amicable settlement of any dispute
which has arisen. Here again the actions of the Secretary of State
are neither in the form of a correction of the taxpayer's report nor
in the form of an assessment and demand--they are merely efforts by
this official to arrive at a solution whereby he will be satisfied
that the proper tax is paid and whereby he will deem it unnecessary
to refer the matter to the Attorney General.

Honorable Sidney Latham Page 8

In the instant situation the Secretary of State has decided that items of unrealized profit should be included as a part of surplus in computing the amount of the franchise tax, and that the failure to include such items in past years has resulted in a deficiency with respect to the payments for such years. We regard this decision as being in accord with the case of United North & South Development Company v. Heath, et al., supra, and with the foregoing portion of this opinion. In accordance with this opinion, the amount of the additional taxes due is to be based upon the actual value of the items of unrealized profit. If the taxpayer refuses to pay any additional taxes or if he tenders additional taxes computed upon a value of unrealized profits which the Secretary of State feels is not in accord with the actual value of such profits, the Secretary of State is privileged to report such delinquency to the Attorney General for appropriate action. Contrariwise, if the taxpayer tenders additional taxes computed upon a value of unrealized profits which the Secretary of State believes to be in accord with the actual value of such profits, the Secretary of State is privileged to acquiesce in the payment of such taxes, and in this situation he will not, of course, report the matter to the Attorney General.

Applying these principles, we shall answer your remaining questions individually:

Your second question is answered in the negative. Neither expressly nor by implication do our statutes authorize the amendment of franchise tax reports after they have been filed with the Secretary of State. The sworn statements referred to in your question may have an importance hereinafter indicated, but they afford no basis for an amendment of the franchise tax reports. This answer makes unnecessary a reply to your third question.

In answer to your fourth question, you are respectfully advised that you are privileged to accept the check for $200.00. If you are satisfied that this figure represents the amount of the additional taxes when such amount is computed upon the actual value of the items of unrealized profits, you will, of course, take no further action with respect to this payment. On the other hand, if you are not satisfied that this figure represents the proper amount of the additional taxes due, you are privileged to request the Attorney General to bring suit to recover any additional sum which you feel to be due.

Your fifth question is answered as follows:  Your
duty in matters of this kind is to ascertain whether in your
opinion the tax is computed upon the proper values.  If you
are not satisfied that the tax is so computed, you will refer
the matter to the Attorney General; if you are so satisfied,
presumably you will acquiesce in the payment of the tax.  In
satisfying yourself of the correctness of these values, and
thus in deciding whether or not to refer the matter to the
Attorney General, you are privileged to make a bona fide de-
cision upon the basis of any evidence which you deem sufficient.
Thus, you may--and in most cases doubtless will--base your
decision upon the information contained in the franchise tax
report.  However, if you believe this information to be in
error, we feel that you may base your decision upon sworn
corrections of such report, upon the results of an investiga-
tion made by you or your staff, or upon any other evidence
which is satisfactory to you.

Trusting that the foregoing satisfactorily answers
your inquiries, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By    R. Dean Moorhead

R. Dean Moorhead
Assistant

RDM:ncd

APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN
